**BOWLES, Price Administrator, v. RUBY et al.**

No. 556.

District Court, D. Montana.

Aug. 10, 1945.

Clarence E. Wohl, Dist. Enforcement Atty., and Edw. C. Alexander, Enforcement Atty., both of Helena, Mont., and Max D. Melville, Regional Litigation Attorney, of Denver, Colo., for plaintiff.

D. W. Maddox, of Hardin, and Wellington D. Rankin and Arthur P. Acher, both of Helena, Mont., for defendants.

PRAY, District Judge.

This is an action against the above named defendants for an alleged violation of Revised Maximum Price Regulation No. 471 (9 F.R. 8340, 10427) promulgated by the above named plaintiff as Administrator of the Office of Price Administration, and which became effective July 26th, 1944.

It is alleged in the complaint that "each and all of said defendants (except the defendant Rollo Hart) acting by and through the defendant, Harold O. Ruby, have been and now are in violation of said Revised Maximum Price Regulation No. 471 and said Emergency Price Control Act of 1942 as amended, 50 U.S.C.A.Appendix § 901 et seq., in that they have made and offered to make purchases within the State of Montana and within the jurisdiction of this Court of various quantities of thresher-run Northern Alfalfa seed, as defined in said regulation, from producers and have paid and offered to pay therefor prices in excess of the prices permitted and allowed to be paid under the provisions of said regulation in the following instances."

Then appears a description of ten separate purchases of thresher-run Northern Alfalfa seed alleged to have been in excess of the Maximum Price established by said regulation. It is further alleged that the said defendants acting by and through the defendant Rollo Hart, as their agent and employee, violated said regulation in like purchases of the same kind of seed in four separate instances, as set forth in the complaint.

The defendants deny that they, "or any of them, have violated the provisions of said R.M.P.R. No. 471, or that they have made or offered to make purchases of thresher-run alfalfa seed as defined in said regulations from producers from which they have paid or offered to pay prices in excess of those permitted by said regulations."

The defendants further allege that in twelve of the fourteen purchases above mentioned, "sales had not been completed,

but defendants had offered to purchase alfalfa seeds, and advances had been made with the understanding in each case that the seeds were to be quality-cleaned and that after quality cleaning, as defined by the regulation, the producers would be paid the price authorized for quality cleaned seeds, or if the producer was not satisfied with the offer of defendants after being advised of the amount taken from the gross weight by cleaning operations, the producers could take their seeds and screenings elsewhere, paying a cleaning charge for the services rendered and refunding the advance theretofore made by defendants."

In the other two instances, that of Boyd Farley and Alex Uffalman, it is alleged that the seeds were quality cleaned before being purchased, and therefore the defendants were authorized to pay the price allowed for quality cleaned seeds. In offering to purchase seeds on a quality cleaned basis defendants claim they were following a custom and business practice that has existed in the alfalfa seed industry for many years, but that they have discontinued such practice since being advised by plaintiff that it is a violation of the regulation, and will not continue such practice in the future, unless the Court should construe the regulation as authorizing such practice, and to that end a cross-complaint appears in the answer seeking a declaratory judgment.

The plaintiff admits that the regulation "does not specifically prohibit the practice of selling thresher-run seed on a quality cleaned basis, without imposition of a cleaning charge where the cleaner is the purchaser," but he contends "that the Administrator did not countenance such practice in the regulation, even though he did not specifically prohibit it," and that he did fix a maximum price for thresher-run seed which is the subject of the sales here in question, and that in making such purchases the defendants have exceeded the maximum price established by the regulation.

In view of the general defense and counter-claim the controversy at this stage comes very close to the question of validity of the regulation which appears to be solely the province of another Court to determine.

Counsel for defendants have distinguished between the effect of an agreement to sell and an outright sale, and the

plaintiff, as in other cases of a like nature now pending in the above Court, cites Section 4(a) of the Emergency Price Control Act and Section 2 of Revised Maximum Price Regulation 471, which makes it unlawful to sell or buy at an excessive price or to agree to do so, concluding "In this case, there was an agreement, coupled with overt acts in pursuance thereof. This is not a treble damage case, where a sale must have been completed before a cause of action matures. It is an injunction suit, aimed at stopping harmful practices".

■ Whether the regulation changes an established practice contrary to the provisions of Section 2(h) of the Act, 50 U.S. C.A.Appendix § 902(h), seems to be a question for the Emergency Court of Appeals. Bowles, Administrator, v. Sanden & Ferguson Co., 9 Cir., 149 F.2d 320.

Other cases pending in the above Court, decided about the same time as the instant case, present like questions. Here the defendants assert that they discontinued the practices condemned by the administrator as soon as they were advised, and state that they will conform to the regulation as interpreted by the Administrator in any future purchases of alfalfa seed; and that they had no intention whatsoever of violating the law, claiming that they were mislead by opinions expressed by responsible officers of O.P.A. which, as they construed them, were contradictory or else they misunderstood their meaning. The definition of the regulation in question as given by the Administrator seems to be plain and free from doubt, so that there would seem to be no excuse for failure of compliance in the future on the part of the defendants.

■ As it appears to the Court, from the evidence and arguments of counsel, a violation of R.M.P.R. No. 471 has been established by the proof, whether such violation was intentional or not, if we are to accept the interpretation of the Administrator who promulgated it; and that such interpretation should be given great weight does not require the citation of authorities.

■ In this case there appears evidence of good faith on the part of the defendants, and while that alone would not be decisive of the issue, it is a matter to be given serious consideration by the Court in an equity suit.

■ The final question for decision is whether, in view of the evidence and authorities relied upon by counsel for the

respective parties, the public interest requires the issuance of an injunction at this time; the Court is of the opinion that this question should be answered in the negative, and such is the order herein.

However, after considering all the evidence, favorable and unfavorable to the defendants, the Court is also of the opinion that the case should remain open on the docket during the 1945 seed buying season to enable plaintiff to renew his application for injunction in the event a violation should occur, and such is the further order herein. Each side will pay its own costs.